# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANASTASIA P. DIEHL, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>THE MONEY SOURCE, INC., *et al.*, )<br>    Defendants. )<br>) | CIVIL ACTION 17-0125-WS-B |
| ANASTASIA P. DIEHL, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>PAYMAP, INC., )<br>    Defendant. ) | CIVIL ACTION 18-0017-WS-B |

## ORDER

These matters come before the Court on the Joint Motion to Consolidate and Extend Certain Scheduling Order Deadlines (doc. 84) filed in Civil Action 17-0125-WS-B, as well as the Joint Notice of Filing Motion to Consolidate (doc. 85 in Civil Action 17-0125-WS-B, doc. 11 in Civil Action 18-0017-WS-B) filed in both cases. The Joint Motion has been briefed and is now ripe for disposition.

**I.     Relevant Background.**

The Joint Motion concerns two related matters filed by plaintiff, Anastasia P. Diehl, in this District Court. On March 20, 2017, Diehl filed suit against The Money Source, Inc., LoanCare, LLC and certain other defendants, in an action styled *Anastasia P. Diehl v. The Money Source, Inc., et al.*, Civil Action 17-0125-WS-B (the "*Money Source* Action"). The Amended Complaint in the *Money Source* Action explains that "[t]his action arises from the mismanagement and wrongful actions taken in connection with Plaintiff's home mortgage loan," which was alleged to be owned by LoanCare and serviced by Money Source. (Doc. 58, at 1.) In particular, the pleading asserts that (i) these defendants "consistently held Plaintiff in default of her mortgage despite the fact that every mortgage payment has been timely paid;" (ii) these

defendants "engaged in an aggressive collections campaign … in an attempt to coerce Plaintiff to pay sums she does not owe;" (iii) defendant Money Source violated the Real Estate Settlement Procedures Act by failing to perform the required investigation of Diehl's Notice of Servicing Error; and (iv) defendant Money Source violated the Fair Credit Reporting Act by failing to conduct a proper investigation and correct its credit reporting in response to Diehl's credit reporting dispute. (*Id.* at 1-2.) On the strength of these and other allegations, Diehl asserts claims in the *Money Source* Action for violation of RESPA, breach of the mortgage agreement, fraud (concerning misrepresentations about the Equity Accelerator Program ("EAP") in a telephonic solicitation), invasion of privacy / wanton collections, and multiple violations of FCRA. Discovery closed in the *Money Source* Action last month. By all appearances, that case is almost ready for trial. Indeed, Money Source and LoanCare have both filed motions for summary judgment as to which briefing is ongoing. The *Money Source* Action matter is set for jury trial before the undersigned during the August 2018 civil term.

On January 16, 2018, nearly ten months after commencing the *Money Source* Action, Diehl initiated another civil action in this District Court by filing suit against PayMap, Inc., in an action styled *Anastasia P. Diehl v. PayMap, Inc.*, Civil Action 18-0017-WS-B (the "*PayMap* Action").[1] The Complaint in the *PayMap* Action alleged that PayMap managed the EAP marketed by LoanCare in which Diehl had enrolled, and that Diehl's mortgage payments were routed to PayMap, which then failed to direct such payments to the proper entity to have them

---

[1] Diehl, Money Source and LoanCare collectively explain the timing of the *PayMap* Action as follows: "During the course of discovery in this action, the Parties discovered the identity of a third party, Paymap, Inc. …, which performed certain duties in connection with the Plaintiff's residential mortgage loan." (Doc. 84, ¶ 1; *see also* doc. 100, ¶ 10 ("Had the Parties known certain facts regarding the role played by Paymap in plaintiff's loan soon enough, the Parties would have sought leave to amend to add Paymap as a defendant in [the *Money Source* Action].").) It is unclear why "the Parties" – and particularly LoanCare – would not have been apprised of PayMap's role in managing the EAP program at issue from the outset of this dispute. *See, e.g.,* doc. 90, Exh. A, ¶¶ 18-19 (indicating that the EAP "is owned by Paymap … and is not affiliated with LoanCare," but that LoanCare marketed the EAP until sometime in 2012); doc. 1 in Civil Action 18-0017, at ¶¶ 6 ("LoanCare and Paymap had arranged to market an Equity Accelerator Program"), 8 ("Paymap's involvement was the result of a referral and marketing arrangement between Paymap and LoanCare"). By all appearances, information concerning PayMap's involvement with the EAP was reasonably available to movants long before the Complaint in Civil Action 18-0017 was filed.

credited to Diehl's loan balance. Based on these allegations, Diehl asserts claims against PayMap for fraud (concerning misrepresentations about the EAP in a telephone solicitation and written/electronic correspondence), money had and received, conversion, wantonness, and negligence. To date, discovery has not commenced in the *PayMap* Action. No scheduling order has been entered, and no trial date has been set. The only substantive activity in the *PayMap* Action thus far is defendant's filing of a Motion to Dismiss directed exclusively at the wantonness and negligence claims, as to which briefing is ongoing.

Now, MoneySource, LoanCare and Diehl seek to consolidate the *PayMap* Action into the *Money Source* Action pursuant to Rule 42(a)(2), Fed.R.Civ.P. As grounds for this request, movants reason that consolidation would serve the interests of judicial economy and conserve the parties' resources because both actions "address a common set of facts (the collection and application (or lack thereof) of the mortgage payments) and the legal issues regarding liability for the alleged mismanagement of those payments." (Doc. 84, ¶ 5.) However, PayMap opposes consolidation based on the stark differences in the procedural posture of the two actions, as well as its contention that "there are more issues of fact that are uncommon to both legal actions than issues of fact that are common to both." (Civil Action No. 18-0017, doc. 15, at 3.)

**II.    Analysis.**

The Federal Rules of Civil Procedure authorize a district court to consolidate actions or to "issue any other orders to avoid unnecessary cost or delay" when multiple actions before it "involve a common question of law or fact." Rule 42(a), Fed.R.Civ.P. The rule "is permissive and vests a purely discretionary power in the district court." *Young v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1168 (11th Cir. 1995) (citations omitted); *see also Eghnayem v. Boston Scientific Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017) ("A district court's decision whether to consolidate is 'purely discretionary.'") (citation omitted). "What this means is that the mere existence of common issues, although a prerequisite to consolidation, does not mandate a joint trial." *Pennsylvania Lumbermens Mutual Ins. Co. v. D.R. Horton, Inc.*, 2015 WL 7888150, *2 (S.D. Ala. Dec. 1, 2015) (citation and internal quotation marks omitted). "The trial court's managerial power is especially strong and flexible in matters of consolidation." *Center for Biological Diversity, Inc. v. BP America Production Co.*, 704 F.3d 413, 432 (5th Cir. 2013) (citations omitted).

The Eleventh Circuit has explained that "[i]n exercising its considerable discretion, the trial court is obliged to consider … [w]hether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Eghnayem*, 873 F.3d at 1313 (citation omitted).[2] "The party requesting consolidation bears the burden of showing that the balance weighs in favor of consolidation." *Clayton v. District of Columbia*, 36 F. Supp.3d 91, 94 (D.D.C. 2014); *see also Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 136-37 (S.D.N.Y. 2016) ("[A]t all times, the burden remains with the moving party to demonstrate that consolidation is appropriate.") (citation omitted).

All parties agree that common issues of fact and law render these cases eligible for discretionary consolidation pursuant to Rule 42.[3] Those commonalities include the servicing and payment history of Diehl's mortgage loan, the circumstances under which Diehl enrolled in the EAP program, whether actionable misrepresentations were made to Diehl in connection with the EAP program and if so by whom, and how Diehl's loan came to be in default. That said, there are also significant areas of factual and legal divergence between the *Money Source* Action and the *PayMap* Action. Many of Diehl's claims and allegations in the *Money Source* Action relate to the "aggressive collections campaign" pursued by Money Source and LoanCare, including

---

[2] *See also Campbell v. Boston Scientific Corp.*, 882 F.3d 70, 74 (4th Cir. 2018) (reciting same list of factors and legal standard for consolidation analysis); *American Family Home Ins. Co. v. Hillery*, 2009 WL 2711901, *2 (S.D. Ala. July 20, 2009) ("In exercising that discretion, district courts must weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated.") (citations omitted).

[3] In their reply brief, Money Source, LoanCare and Diehl characterize PayMap's stance as being that the *Money Source* Action and the *PayMap* Action "do not address a common set of facts and legal issues." (Doc. 100, at 2.) This assertion misstates PayMap's position. In fact, PayMap does not (and cannot reasonably) deny the presence of overlapping factual and legal issues between the two actions; rather, PayMap's argument is that "there are more issues of fact that are uncommon to both legal actions than issues of fact that are common to both the PayMap Action and the TMS Action." (Civil Action No. 18-0017, doc. 15, at 3.)

multiple alleged statutory and common-law violations arising from their collection activities. By contrast, Diehl's claims in the *PayMap* Action include allegations that PayMap failed to direct her payments made under the EAP to the proper account, and converted the proceeds. In short, while there certainly are areas of factual and legal overlap between the two actions, those commonalities are limited and should not be overstated. That observation, in turn, mutes the efficiency gains that would be reaped from consolidation, for purposes of the Rule 42(a) balancing analysis.

On the other hand, as PayMap correctly points out, the two actions are in drastically different procedural postures. Whereas the *Money Source* Action is at the summary judgment stage and essentially ready for trial, the *PayMap* Action remains nascent. It is well settled that "[c]onsolidation may properly be denied in instances where the cases are at different stages of preparedness for trial." *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989).[4] To consolidate these two cases at this juncture would be to derail the trial-ready *Money Source* Action for a prolonged interval; indeed, no answer has been filed, no scheduling order has been entered, and no discovery has taken place in the *PayMap* Action. The *Money Source* Action

---

[4] *See also Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Services, LP*, 785 F.3d 96, 102 (3rd Cir. 2015) ("But in light of the vastly different stages of the cases – Gateway filed its complaint in the contribution action just eight days before it moved to consolidate, while discovery had already closed and Lehman had already submitted its trial brief in this case – the District Court acted well within its discretion in declining to consolidate."); *Kamdem-Ouaffo*, 314 F.R.D. at 137 ("Notably, judicial economy would not be served by consolidating two actions at such disparate stages."); *Ulibarri v. Novartis Pharmaceuticals Corp.*, 303 F.R.D. 402, 404 (D.N.M. 2014) (denying consolidation where one case was "in a completely different procedural stage" than the other, with discovery closed and summary judgment motions filed in one case but discovery still ongoing in the other); *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp.2d 535, 542 (D.N.J. 2008) (declining consolidation where "[d]iscovery in the 2006 action is nearly complete, and pending before the Court are two summary judgment motions," while "[t]he 2007 action … is in its preliminary stages," with perhaps no discovery having occurred); *Beloit v. Killion & Sons Well Service, Inc.*, 2016 WL 4539624, *2 (W.D. Pa. Aug. 31, 2016) ("courts have denied consolidation where the cases in question are at such distinct phases that consolidation would cause undue delay in the further-progressed case"); *Northstar Marine, Inc. v. Huffman*, 2014 WL 4167019, *5 (S.D. Ala. Aug. 21, 2014) ("Given the vastly divergent procedural posture of the two cases, … the Court finds that consolidation is not appropriate in these circumstances."); *In re Currency Conversion Fee Antitrust Litigation*, 2009 WL1834351, *2 (S.D.N.Y. June 18, 2009) ("Because the American Express Action currently holds a significant lead over the Bank of America Action in the march to a trial, this Court denies Plaintiffs' motion to consolidate the related actions").

litigants would be forced to remain in a holding pattern for many months waiting for the *PayMap* Action to catch up. Moreover, PayMap (a newcomer to a dispute that Diehl, Money Source and LoanCare have been living with for quite some time) may be prejudiced if consolidation occurs. After all, there would be an inherent risk that discovery time frames may be compressed or scheduling order deadlines accelerated in order to expedite the *PayMap* Action's progress through the discovery and dispositive motions processes so that this consolidated litigation might become ready for trial as expeditiously as possible, all to PayMap's detriment.[5]

As noted, the Rule 42(a) balancing test requires a federal district court to weigh the benefits and burdens of the proposed consolidation. Although binding precedent indicates that numerous factors are germane to the inquiry, the only advantage identified by movants is that consolidation would serve the interests of judicial economy and conserve the parties' resources in resolving all of Diehl's claims against all defendants. (Doc. 84, ¶ 7; doc. 100, ¶ 17.) It is true that efficiency gains could be realized by consolidating the two matters, given the overlapping factual and legal issues. It is also true, however, that such efficiency gains would likely be modest, given the limited commonalities between the two cases and the significant areas of factual and legal divergence. Balanced against that consideration are the certainty that the *Money Source* Action would be substantially delayed if consolidation were granted, and the risk that PayMap might incur prejudice as a result of undue pressure to constrict applicable pretrial deadlines as a means of forcing the *PayMap* Action to catch up to the *Money Source* Action. Under the circumstances, movants have not met their burden of showing that the advantages of consolidation outweigh the disadvantages. After weighing the value of time and effort saved by consolidation against the inconvenience, delay and expense increased by it, the Court exercises its discretion under Rule 42(a) to deny consolidation of these related actions.

---

[5] This risk is underscored by movants' representation that they "seek only a limited extension of scheduling order deadlines for discovery and dispositive motions to permit the parties the opportunity to engage in discovery with Paymap." (Doc. 100, ¶ 15.) The "limited extension" proposed by Money Source, LoanCare, and Diehl sounds suspiciously shorter than the full measure of discovery and dispositive motion time that PayMap would be allotted via Rule 26 and the separate scheduling order to be entered in the *PayMap* Action in the absence of consolidation.

## III. Conclusion.

For all of the foregoing reasons, the Joint Motion to Consolidate and Extend Certain Scheduling Order Deadlines (doc. 84) is **denied**. This ruling is without prejudice to movants' ability to renew their Joint Motion at a later date if circumstances change in a manner that might materially alter the Rule 42(a) balancing analysis.

DONE and ORDERED this 16th day of March, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE