IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANASTASIA P. DIEHL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 18-0017-WS-B |
| | ) |
| PAYMAP, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss Plaintiff's Fourth and Fifth Counts in Plaintiff's Complaint (doc. 8). The Motion has been briefed and is now ripe for disposition.

**I.  Background.**

On January 16, 2018, plaintiff, Anastasia P. Diehl, filed a Complaint (doc. 1) against defendant, PayMap, Inc., arising out of PayMap's alleged involvement in an "Equity Accelerator Program" ("EAP") offered through Diehl's mortgage company. According to the well-pleaded factual allegations of the Complaint, which are accepted as true on Rule 12(b)(6) review, Diehl entered into a mortgage loan transaction in April 2014. Immediately after doing so, Diehl received notice that her loan was being transferred to The Money Source Inc. ("TMS") and would be serviced by TMS and LoanCare, LLC, as subservicer. (Doc. 1, ¶ 6.)[1] The Complaint alleges that sometime thereafter Diehl agreed to have her payments deducted bi-monthly "through LoanCare's EAP." (*Id.*, ¶ 9.) Plaintiff alleges that "[t]he EAP was represented and marketed as the 'LoanCare Equity Accelerator Program,'" and Diehl was led to believe "that the

---

[1]  Neither TMS nor LoanCare have been joined as parties defendant in this action; however, Diehl is pursuing a separate civil action against them in this District Court, in an action styled *Anastasia P. Diehl v. The Money Source, Inc., et al.*, Civil Action 17-0125-WS-B. Because of the starkly different procedural postures of the two actions, and the concomitant risk of prejudice, the Court denied a request by Diehl, TMS and LoanCare (opposed by PayMap) for consolidation of these two related actions. (*See* doc. 16.)

program was operated through LoanCare." (*Id.*, ¶ 6.) In fact, however, the Complaint alleges that "the EAP was managed by Paymap … and payments were actually directed to Paymap and then to LoanCare to apply to the loan." (*Id.*)

According to the Complaint, problems arose when multiple payments deducted from Diehl's account pursuant to the EAP in early 2016 were not properly applied to her loan balance, prompting TMS to consider the loan in arrears and to initiate collection efforts against Diehl. (*Id.*, ¶¶ 10-13.) Eventually, Diehl learned that the funds withdrawn from her bank account pursuant to the EAP "were actually directed to Paymap, a separate entity that manages the EP, and that the failure to timely deliver the funds so that they could be applied to the mortgage resulted from Paymap's failure to direct the payment to the property [*sic*] entity." (*Id.*, ¶ 12.) Plaintiff claims to have been damaged by PayMap's "failure to direct the payments so that they would be properly applied to the mortgage payment." (*Id.*, ¶ 13.) That said, the Complaint is devoid of any factual allegations that Diehl ever entered into a contractual relationship with PayMap concerning its management of the EAP program, or that TMS ever entered into a contractual relationship with PayMap either. Rather, PayMap's involvement is alleged to have been "the result of a referral and marketing arrangement between Paymap and LoanCare where by [*sic*] any borrower's request for bi-monthly payments would be referred to Paymap so that it could place the borrower in its" EAP. (*Id.*, ¶ 8.)

Based on these and other allegations, Diehl's Complaint asserts state-law causes of action against PayMap sounding in fraud (Count I), based on allegations that PayMap made false representations to induce Diehl to enroll in the EAP; money had and received (Count II), based on allegations that PayMap "retained or misdirected" the funds withdrawn from Diehl's account, such that they "have not been used to satisfy the loan obligations;" conversion (Count III), based on allegations that PayMap "wrongfully converted and exercised dominion and control over" Diehl's funds that were intended to be applied to her mortgage loan balance; wantonness (Count IV); and negligence (Count V). PayMap now moves for dismissal of Counts IV and V, arguing that they fail to state viable claims for relief under Alabama law, such that dismissal is appropriate pursuant to Rule 12(b)(6), Fed.R.Civ.P.

**II.     Analysis.**

The sum total of PayMap's argument for dismissal of Counts IV and V is that they run afoul of the principle that no cause of action for negligent or wanton servicing of a mortgage

account exists under Alabama law, at least where (as here) the plaintiff alleges solely economic injury. (Doc. 8, at 4.) Plaintiff counters that PayMap's argument misapprehends the Complaint and misapplies the law. (Doc. 17, at 1.)

Without question, "recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law." *James v. Nationstar Mortg., LLC*, 92 F. Supp.3d 1190, 1198 (S.D. Ala. 2015).[2] The Alabama Supreme Court has explained that "the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim," and has noted with approval that "federal courts applying Alabama law have repeatedly rejected attempts to assert wantonness claims based on a lender's actions handling and servicing a mortgage once the mortgage is executed." *U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So.3d 302, 314 (Ala. 2015). The *Shepherd* Court reasoned that the relationship between a borrower and a mortgage servicer "is based upon the mortgage and is therefore a *contractual* one," such that any remedy should be via breach-of contract claim. *Id.*[3] PayMap's Motion to Dismiss invokes this line of authority, positing that Diehl's Complaint "asserts tort claims against Defendant PayMap for allegedly acting improperly with regards to the servicing of her mortgage loan." (Doc. 8, at 2.)

In response, Diehl argues that her Complaint nowhere identifies PayMap as a loan servicer, there are no allegations of any contractual relationship between Diehl and PayMap, and "the claims against PayMap do not depend on or relate to any contractual relationship." (Doc. 17, at 2.) Thus, Diehl's position is that the *James / Shepherd* line of authority is distinguishable

---

[2] *See also Rice v. Seterus, Inc.*, 2018 WL 513345, *4 (N.D. Ala. Jan. 23, 2018) ("The Alabama Supreme Court has explicitly rejected negligence and wantonness claims premised on duties arising with regard to servicing and handling mortgages.") (citations and internal quotation marks omitted); *Gregory v. Select Portfolio Servicing, Inc.*, 2016 WL 4540891, *9 (N.D. Ala. Aug. 31, 2016) ("The Alabama Supreme Court has held no claim for negligent loan servicing exists in Alabama."); *Shedd v. Wells Fargo Bank, N.A.*, 2016 WL 3264127, *3 (S.D. Ala. June 13, 2016) (finding that "[a]bundant federal authority" supports the premise that "Alabama law does not recognize a cause of action for wanton servicing of a mortgage loan") (citation omitted).

[3] *See also Rice,* 2018 WL 513345, at *4 (concluding that plaintiff lacked viable negligence or wantonness claims because "[a]ny obligations Defendants owed to Plaintiff arose from the mortgage agreement, note, and settlement agreement between Plaintiff and Defendant Chase pertaining to the mortgage account").

on its facts because, as pleaded in the Complaint, "PayMap's role stems not from the mortgage or note, but from its contractual relationship with LoanCare. Unlike in the mortgage context, Plaintiff is a stranger to that contract." (*Id.* at 8.) Furthermore, Diehl points to settled Alabama law that an entity performing contractual duties has a duty of care to prevent foreseeable harm to third parties. *See, e.g., QORE, Inc. v. Bradford Bldg. Co.*, 25 So.3d 1116, 1124 (Ala. 2009) (recognizing that "where one party to a contract assumes a duty to another party to that contract, and it is foreseeable that injury to a third party – not a party to the contract – may occur upon a breach of that duty, the promissor owes that duty to all those within the foreseeable area of risk") (citation omitted). "A breach of such a duty that results in injury to a third party who is 'within the foreseeable area of risk' is actionable negligence." *Id.*; *see also Federal Mogul Corp. v. Universal Const. Co.*, 376 So.2d 716, 724 (Ala.Civ.App. 1979) ("plaintiff may nevertheless recover in negligence for defendant's breach of duty where defendant negligently performs his contract [as to which plaintiff is a stranger] with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable").

Simply put, then, Diehl's position is that the *James* / *Shepherd* cases finding no cause of action for negligent/wanton mortgage servicing have no application here because PayMap was multiple steps removed from the mortgage and note (as well as the loan servicing duties created thereby). According to Diehl, as pleaded in the Complaint, PayMap was not a servicer of Diehl's mortgage loan and her claims are not based on a mortgage; rather, her claims against PayMap stem from PayMap's contract with LoanCare to administer the Equity Accelerator Program, a financial product that LoanCare and/or PayMap marketed to Diehl. In light of PayMap's lack of direct involvement with the mortgage and associated contracts, Diehl maintains that *James* / *Shepherd* principles are not fatal to Counts IV and V, given the general rule that contracting parties owe a duty of care to third parties who may foreseeably be harmed in the event of breach.

In its reply, PayMap sets forth its counterargument. (*See* doc. 19.) Significantly, PayMap does not quarrel with Diehl's reading of Alabama law, and particularly the proposition that as contractual relationships become attenuated from the mortgage and note, the *James* / *Shepherd* strand of decisions gives way to the *QORE* principle that a plaintiff who is a stranger to a contract may have a claim in negligence under Alabama law against a defendant who

breaches that contract, where injury to plaintiff is reasonably foreseeable.[4] Instead, PayMap's argument is that the distinction urged by Diehl is inconsequential here because PayMap really was acting as a "servicer" or "co-servicer" of Diehl's mortgage loan. Contrary to PayMap's assertion, the well-pleaded factual allegations of the Complaint do not necessarily require that conclusion. Indeed, a perfectly reasonable reading of the facts alleged in the Complaint is that PayMap had nothing to do with servicing Diehl's mortgage, but merely administered an add-on program (the EAP) marketed by LoanCare by receiving funds from Diehl's bank account, then forwarding them to LoanCare to be directed to the mortgage company. The Complaint alleges that, during the relevant time, Diehl's loan was serviced exclusively by nonparty TMS. (Doc. 1, ¶ 10.) According to facts alleged in the Complaint, PayMap was at least two steps removed from the loan servicer (TMS) and lacked any direct connection to Diehl's mortgage. In that event, PayMap's obligations to Diehl would arise not from the mortgage agreement or note, but from the PayMap / LoanCare agreement, as to which Diehl was a third party within the foreseeable area of risk. Because a reasonable factfinder could conclude from these allegations (accepted as true) that PayMap was not servicing Diehl's mortgage loan, defendant's argument is not persuasive at the Rule 12(b)(6) stage.[5]

## III. Conclusion.

For all of the foregoing reasons, Defendant PayMap, Inc.'s "Motion to Dismiss Plaintiff's Fourth and Fifth Counts in Plaintiff's Complaint" (doc. 8) is **denied**. PayMap is **ordered** to file an Answer to the Complaint by no later than **May 3, 2018**.

DONE and ORDERED this 19th day of April, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[4] Defendant having neither rebutted nor challenged plaintiff's construction of these authorities, the Court will not *sua sponte* attempt to develop such arguments on defendant's behalf, but instead accepts plaintiff's formulation as an accurate statement of Alabama law.

[5] PayMap insists that servicer status is conclusively established by the Complaint's allegation that Diehl received a notice that the EAP "is offered by LoanCare under an agreement with Paymap" and that Paymap will "assist [LoanCare] in offering the program to you." (Doc. 1, ¶ 7.) PayMap also points to the Complaint's allegations that EAP funds were initially directed to PayMap (doc. 1, ¶ 12) as establishing that PayMap was the loan servicer. The Court finds these statements do not mandate a conclusion that PayMap serviced Diehl's mortgage.